FILED'11 JUN 3 13:10USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Michelle M. Buswinka, and
Maurice L. Breslin,

        Plaintiffs,

Civ. No. 10-3033-PA

v.

ORDER

Josephine County, a political
subdivision of the State of Oregon,
and David A. Bassett, P.E.,

        Defendants.

**PANNER, District Judge:**

Before the court is Defendants' motion for summary judgment [#37]. For the following reasons, Defendants' motion for summary judgment is denied.

## Undisputed Facts

Plaintiffs are Michelle Buswinka ("Buswinka") and Maurice Breslin ("Breslin"). Defendants are Josephine County ("County") and David Bassett ("Bassett"), head of the County's Building Safety Department from April 1998 through June 2007.

1-ORDER

Plaintiffs seek damages for injuries suffered July 11, 2008 after falling 15 feet while vacationing at the Out'n'About Treehouse Treesort ("Treesort"). Plaintiffs allege the County failed to monitor and enforce Treesort's building permits.

In 1996, Treesort and the County first entered into litigation regarding four treehouses built on the property without permits. In 1998, the County granted retroactive permits for the existing treehouses. The four existing structures were engineered by Charles S. Greenwood, P.E. and inspected by Bassett. (Pretr. Ord. # 42 ¶ 8.) "Treehouse A's" conditional permit required annual inspections and certifications by an engineer and arborist. (Pretr. Ord. #42 ¶ 9.) Over the next several years, Treesort filed renewal applications that specifically stated Treesort had not constructed any additional strucutres. However, during that time, Treesort built an additional 8-9 treehouse structures, including Treeloon, where Plaintiffs fell. (Black Aff. Ex. 5, at 16,18,24-37).

In 2000, Michael Snider, the County's Planning Director, instituted a new enforcement policy establishing three tiers of County building and planning enforcement actions. (Mitton Aff. Ex. 1, at 1-8.) The Policy acknowledges that all violations "merit some level of consideration" regardless of complaint source, but "also recognizes that fiscal resources do not permit the investigation and enforcement of all complaints." (Id.)

2-ORDER

The policy's high priority level consists of formal and agency complaints that "involve an immediate and serious risk" to property, neighbors property, or the public. (Id. at 2). Absent "contrary instruction" from the Director, violations in this category require visiting the site, contacting the owner, and potentially initiating a small claims action. (Id. at 8.) The intermediate level involves formal or agency complaints that pose an "identifiable risk" that will be addressed "as administrative resources allow." (Id. at 3.) The policy requires visiting the site and sending a courtesy notice for intermediate level violations. (Id. at 8.) Low priority level consists of formal and agency complaints that do not appear to pose a risk. (Id. at 4.) The policy requires sending a courtesy notice for low level priority. (Id. at 8.) All three levels allow for the "judgment of the Director" when considering enforcement actions to pursue. (Id. at 2-4.)

Between 2000 and the time Plaintiffs' injuries occurred, County employees visited Treesort several times. These visitors included Department of Health inspectors and Building Department Director Bassett. The health inspectors cited Treesort for exceeding the authorized number of employees. (Black Aff. Ex.2, at 18-22.) Bassett visited Michael Garnier's (owner of Treesort) properties four times between 2004 and the time of Plaintiffs' injuries. Bassett testified that he did not notice any non-

3-ORDER

permitted structures during his post-1998 visits. (Black Aff. Ex. 1, at 12-21.) Bassett also testified that if he had seen the structures he would have informed the County's code enforcement officer, initiating compliance and enforcement procedures. (Black Aff. Ex.1, at 15.) It is undisputed that County did not receive any building or planning complaints regarding Treesort prior to Plaintiffs injuries and County took no enforcement action.

On July 11, 2008, Plaintiffs were staying at the Treesort. While Plaintiffs stood on an elevated bridge, the handrail broke and Plaintiffs fell 15 feet to the ground. As a result of the fall, Buswinka broke her spine and Breslin suffered a traumatic brain injury.

### Standards

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences

4-ORDER

are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## Discussion

### I. The Issue of Bassett's Knowledge Precludes Granting Defendants' Motion for Summary Judgment.

The parties dispute whether Defendant Bassett knew of the additional unpermitted structures at Treesort. Defendants rely on Bassett's testimony to assert there was no actual knowledge of the additional structures. Bassett testified that he did not see the additional structures during any of his four visits to Garnier's properties after 1998. (Black Aff. Ex. 1, at 12 (2007- saw only the ziplines with son); at 13-14 (2004- stayed in parking lot while engineers went on a tour and did not notice additional structures); at 20-21 (2006- did not see additional Treesort structures from Garnier's personal residence.)) Garnier testified that he "made sure [Bassett] was looking at my house" so [Bassett] would not "see any new structures." (Black Aff. Ex. 5, at 20.)

In response, Plaintiffs argue a reasonable juror could find that Bassett knew of the additional unpermitted treehouses on Treesort. Plaintiffs argue Bassett could have, or should have,

5-ORDER

seen the treehouses during any one of his four visits to the Treesort. Plaintiffs rely on Bassett's testimony where he stated that he probably would have seen the new treehouses "if they had been there at the time." (Black Aff. Ex. 1, at 14.) Plaintiffs also argue County should have known of the new structures because of the conditional bed & breakfast licensing requirements. The bed and breakfast permit required a letter assuring compliance from the County's Planning, Building and Safety, Environmental Quality, and Health Departments. (Black Aff. Ex. 2, at 15-16.)

Additionally, as part of its conditional permit, Treehouse A required annual certification from an engineer and arborist. It is undisputed that County never received updates and County never followed up to ensure compliance at Treehouse A. (Agreed Facts ¶ 11.) Bassett testified that he did not know about the additional permit condition for Treehouse A. (Black Aff. Ex. 1, at 7.)

Finally, plaintiffs argue County knew of Treesort code violations because of numerous Health Department inspections. From 2003 through 2007, there were at least four inspections, all of which acknowledged Treesort exceeded the number of employees allowed by the permit. (Id. at 18-22.) As noted, Plaintiffs argue the cumulation of the evidence creates a genuine issue of material fact as to the County and Bassett's actual knowledge of the unpermitted structures.

The contested issue of Bassett's actual knowledge of

6-ORDER

additional unpermitted structures is central to this case. Plaintiffs rely on Bassett's knowledge, and subsequent inaction as a basis of the negligence claim. Defendants' discretionary immunity defense is only applicable if County employee with the requisite authority made a policy decision regarding Treesort. Ramirez v. Hawaii T & S Enters., Inc., 179 Or App 416, 419, 39 P.3d 931 (2002). If Bassett knew of the structures but failed to relay that information to someone with the requisite authority to choose not to enforce the violations, it is difficult to see how discretionary immunity applies. Because of the importance of Bassett's knowledge to the resolution of the case, the question of his knowledge regarding additional unpermitted structures at Treesort raises a genuine issue of material fact that precludes granting Defendants' motion for summary judgment.

## II. Application of Discretionary Immunity Defense is Also Dependent on Determination of Bassett's Knowledge and County's Enforcement Policy.

The parties dispute the application and relevance of the discretionary immunity defense. Defendants argue the discretionary immunity defense applies even if Bassett knew of the additional structures. Plaintiffs argue County's three-tiered discretionary enforcement policy is inapplicable. For a public entity to prevail on the discretionary immunity defense: (1) there must be a choice; (2) the choice must involve public policy rather than "day to day activities"; and (3) the choice

7-ORDER

must be made by an employee with the requisite authority. Ramirez, 179 Or at 419, 39 P.3d 931; Miller v. Grants Pass Irrig. Dist., 297 Or 312, 316, 686 P.2d 324 (1984)

Defendants argue discretionary immunity applies to County because Treesort's violations fell under the intermediate priority level of the policy. Defendants argue the treehouses are not "dwellings" as defined by the County. Dwellings are "one or more rooms containing one kitchen and occupied by one family." (Mitton Aff., County Land Code at 3.) Defendants argue the treehouses are "habitable structures constructed without permits", which are high priorities only in presence of formal complaint. (Defs.' Memo. in Supp. of Summ. J. at 6.)

The intermediate level also includes "violations of the requirements of Site Review or Conditional Use Permits." (Mitton Aff. Ex. 1, at 4.) It is undisputed that County did not receive formal complaints regarding Treesort prior to Plaintiffs' accident. Defendants argue absent formal complaints, habitable structures and conditional use violations fall into the intermediate category where enforcement is prioritized by Director Snider. (Id.)

Snider's testimony supports Defendants' argument. Snider testified that additional structures or excessive employees at Treesort would not "constitute immediate and extraordinary risk to the public", absent a formal complaint. (Mitton Aff., Snider

8-ORDER

Dep., at 36-37.)  Snider also testified that County policies of encouraging home occupation and prioritizing new permit applications led to enforcing only formal complaints and extreme risks.  However, Snider's testimony regarding Treesort occurred during the course of this litigation and a reasonable juror could find to the contrary.  Therefore, there is a genuine issue of material fact regarding the appropriate tier of enforcement for the unpermitted Treesort structures.

In response, Plaintiffs argue County's non-enforcement against Treesort was negligent application of existing policy. (Plfs.' Memo. in Opp. to Defs.' Mot. for. Summ. J., at 14.) Plaintiffs argue County negligently enforced the mandatory conditions of the retroactive building permits and the conditional bed and breakfast permits.  Plaintiffs argue it was "expressly determined that County would require annual followup" and this requirement does not involve discretion. (Id. at 16.) In the alternative, Plaintiffs argue that even if the policy is applicable, the history of litigation with Treesort shows County considered Treesort posed an immediate and extraordinary risk (thus belongs in the high priority category).  (Id. at 15.)

As noted above, the discretionary immunity defense only applies when an employee with the requisite authority makes a policy decision.  Since actual knowledge and classification of additional structures at Treesort by County is disputed, the

applicability of the discretionary immunity defense is unknown. Therefore, Defendants motion for summary judgment must be denied as to Defendants' discretionary immunity defense.

### III. OTCA's Applicability and Potential Dismissal of Bassett will be Determined at Later Time.

As this court stated in Doe ex rel. Christina H. v. Medford School Dist. 549C, Oregon courts decline to substitute the public body as sole defendant and "instead reserve the determination of whether or not to dismiss Defendants until damages have been rewarded." No. 3113-CL, 2011 WL 1002166, at *5 (D.Or 2011). This allows the Court to assess the "merits of an as applied challenge to the OTCA's damage cap. Id. Considering the questions raised regarding Bassett's knowledge of the events at issue, dismissing Bassett is not appropriate at this time. Therefore, Bassett is not dismissed and the damage cap is not applicable at this time.

### Conclusion

Defendants' motion for summary judgment [#37] is denied.

IT IS SO ORDERED.

DATED this ___ day of June, 2011.

*/s/ Owen M. Panner*

OWEN M. PANNER

U.S. DISTRICT JUDGE